## Hathorn *vs.* Curtis *&* al.

The managing owner of a coasting vessel, let to the master on shares, and employ-ed in a distant place in the wood-trade, wrote a letter to a third person, requesting him to " say to E. [the master of the vessel,] that he had better buy a load of good wood on the best terms he can, if he can get a deck load of hay on freight:"—which was held sufficient authority to the master to purchase on account of the owners, according to the terms of the letter.

This was an action of *assumpsit* against the defendants as own-ers of the schooner *Five Brothers*, of which one *Eastman* was mas-ter, to recover the price of a quantity of wood and bark, shipped by the plaintiff on board the schooner at *Dresden*, to be carried to *Boston* and sold, and the proceeds to be remitted to the plaintiff; al-leging that it was so conveyed and sold, but that the proceeds had not been paid over.

At the trial, which was before *Parris J.* upon the general issue, the plaintiff proved that about the first of *June*, 1829, the schooner arrived in the *Kennebec* river, in charge of one *Moore* as master, who soon after made a parol contract with *Eastman*, by virtue of which the latter received the vessel, agreeing to victual, man, and take charge of her, for one half of her earnings. *Eastman* made one trip in her to *Boston*, with a cargo of wood belonging to one *Carney* and others, which was sold to *Curtis*, one of the defendants and managing owner, and the price, after deducting half the freight, was paid by *Curtis* to *Eastman*, and by him, after deducting the other half the freight, to *Carney*, on the return of the vessel to the *Kennebec*. After remaining in the river unemployed for some time, *Curtis* addressed a letter to one *Stover*, master of another vessel of the defendants then lying in the *Kennebec* river ; in which he requested him to " say to *Eastman* he had better buy a load of good wood on the best terms he can, if he can get a deck load of hay on freight, as it sells quick now at ten dollars per ton." This message was ac-cordingly communicated to *Eastman*, and by him to the plaintiff,

who thereupon contracted with him for the wood and bark mentioned in the declaration ; which was delivered, and a memorandum of the purchase made by *Eastman* and handed to the plaintiff, in which the cargo was entered as bought of the plaintiff "for the schooner *Five Brothers.*" *Eastman* agreed either to leave the proceeds of sales with the owners in *Boston,* or to bring the money to the plaintiff; and he testified that his application to the plaintiff for a cargo was solely in consequence of the above letter ; but for which, he should have waited for a freight. *Curtis* alone kept a wood wharf in *Boston,* and, with the other defendants, had several vessels employed in carrying wood, bark, &c. from the *Kennebec* to *Boston.* No express agreement was ever made between *Eastman* and the defendants respecting the terms on which he was to use or employ the vessel ; nor did he communicate to them the parol agreement between himself and *Moore.*

The cargo in question was sold by *Eastman* to *Curtis* ; after having ascertained, from the state of the *Boston* market, that no one would give more ; and a bill of parcels was given, as of a private sale between them, in common form. The price was paid by *Curtis* to *Eastman,* who brought the money to the *Kennebec,* but never paid it to the plaintiff, though requested. On his return in the schooner, he delivered her up to one *Libby,* as master, and never afterwards went in her. The owners never interfered in the management of the vessel while she was in *Eastman's* hands, except in the message sent by *Curtis,* as above stated. It also appeared that when *Eastman* applied to the plaintiff, he stated that *Curtis* had sent down to him to buy a hold full of wood or bark, and get a deck load of hay ; and that his own credit was so low, that he could not have obtained such a cargo on his own account. And it was proved that people concerned in such business, on the *Kennebec,* were in the habit of sending wood and bark to *Boston,* on account of the vessel, consigned to the master for sales and returns.

Upon this evidence the counsel for the defendant requested the Judge to instruct the jury that the action was not maintainable. This he declined ; but he instructed them that if they should find from

all the evidence in the case that *Eastman* was employed by the general owners as master, for which he was to receive one half the earnings as his compensation, they retaining the right to control the vessel or direct her employment, they might then consider the direction in the letter to *Stover* as sufficient authority to *Eastman* to purchase on account of the owners. Or, if they were satisfied that the general owners retained the right to control the vessel and direct her employment, and that the wood and bark were taken on board by *Eastman* to be transported to *Boston* and sold for and on account of the plaintiff, then they might consider the owners answerable. But if, from the evidence, they were satisfied that *Eastman* purchased the wood on his own account, or that he took the vessel on shares, either for a limited or unlimited time, and that during such time the general owners retained no right of controling the vessel or directing her employment, and that the wood and bark were taken on board to be transported to *Boston* and sold for and on account of the plaintiff, then their verdict should be for the defendant.

The jury thereupon found for the plaintiff; and on being interrogated by the Judge, answered that they found for him under the first instruction. And the defendants moved for a new trial.

*Allen*, for the defendants, cited *Abbot on Shipping*, 100, 102 ; *Thompson v. Snow*, 4 *Greenl.* 264; *Emery v. Hersey, ib.* 470 ; *Reynolds v. Toppan*, 15 *Mass.* 370 ; *Colson v. Bonzey*, 6 *Greenl.* 474 ; *Taggard v. Loring*, 15 *Mass.* 336 ; *Champlin v. Buller*, 18 *Johns.* 169; *Perry v. Osborn*, 5 *Pick.* 422.

*Evans*, for the plaintiff, cited some of the same cases, and *Kemp v. Coughtry*, 11 *Johns.* 107.

PARRIS J. delivered the opinion of the Court.

The contract, under which *Eastman* had charge of the *Five Brothers*, was an important fact in this case to be settled at the trial. If he was the hirer of the schooner for the voyage, or for a term unexpired, when the wood and bark, charged in the plaintiff's writ, were taken on board and transported to *Boston*, then, as in law he would be considered the owner while the vessel was thus under his

management and control, the liability of the general owners ceased, and was transferred to him. If he was the master only, and had control of her merely as such, then the liability of the general owners in this action would depend upon the nature of the contract and the circumstances under which it was made.

It is very clear, therefore, that the several questions of fact raised at the trial were properly submitted to the jury, and that the general instruction, requested by the defendants' counsel, that the action was not maintainable, was properly withheld. There are facts in the case tending to shew that *Eastman* was owner for the voyage; such as his contract with *Moore* to take charge of the vessel, victual and man her and have half the earnings; his carrying wood for *Carney* and others, selling it and accounting with them for the proceeds; and several other facts and circumstances which appear in the report. There were also facts in proof which had a tendency to show that *Eastman* was merely master, and acted in that capacity only; the general owners still reserving and exercising the power of directing and controlling the employment of the vessel. Such was the fact that the general owners were interested in a wood wharf; that the schooner was employed in transporting wood from the *Kennebec* river to *Boston;* that her several cargoes, while under *Eastman's* command were delivered to *Curtis,* the managing owner; and the letter from *Curtis* to *Stover,* in which he was directed to say to *Eastman* that he had better buy a load of good wood, &c. It being important that the relation, which *Eastman* held to the vessel should be ascertained, it was properly left to the jury to decide whether he was employed by the general owners as master, they retaining the right to control the vessel and direct her employment; or whether he took her on shares, being clothed, during the existence of the contract, with the power and authority of owner as well as master.

That question, which was one of mere fact, the jury settled; having found that *Eastman* was employed as master only, the general owners retaining the right to control the vessel and direct her employment.

Had he authority, as master, to purchase the wood and bark on account of the defendants ?

The master, in his capacity as such, has power to bind the owners of the ship, in contracts relative to her usual employment only. This power relates merely to the carriage of goods, and the supplies requisite for the ship ; but the owner of the ship cannot be bound by any contract of the master concerning the purchase of cargo. To bind the owner in such a contract, the master must be clothed with powers other than those which are necessarily incident to his office as commander of the ship. He may, indeed, act in the double character of master and supercargo or consignee ; but his power to sell, cases of necessity excepted, or to purchase cargo flows not from his official character as master, but from special authority conferred for that purpose. The evidence, by which this agency is to be proved, may, as in other cases, be positive or presumptive ; by direct appointment contained in letters of instruction, or by general and long continued usage, under which all interested may be presumed to have contracted ; or by subsequent ratification. But unless this agency be superadded to his authority as master, he has no power to bind his owners in any contracts excepting such as relate to the usual employment of the vessel committed to his charge, and the means requisite for that employment. *Eastman*, therefore, merely as master of the *Five Brothers*, had no authority to purchase the wood and bark, charged in the plaintiff's writ, on account of the defendants.

Was he so authorised by the letter to *Stover* ?

The material expressions in that letter are, " say to *Eastman* he had better buy a load of good wood on the the best terms he can, if he can get a deck load of hay on freight, as it sells quick now at ten dollars per ton."

If the purchase was not to be on account of the defendants, why were they so apparently interested ? What had they to do with the terms of purchase, or the contingency of procuring a deck load of hay on freight ? Can it be considered as the mere advice to one in their employment to purchase on his own account. It is to be kept in mind that the jury found that *Eastman* was the master only,

and not the owner for the voyage, and unless they thus found they were directed not to consider the letter as direction or authority, but merely as advice. If such a letter had been written to the owner, it would be advisory merely, as the defendants' counsel contends, because the writer, having no authority over or right to control the vessel, it is not to be presumed that he would attempt to exercise any such power, or that it would be so understood by the person receiving it. But when such language is addressed by an owner to a master in his employment, it may well be considered as clothing him with authority to do what is recommended. Indeed, it can be susceptible of no other construction. *Eastman* and the plaintiff appear to have so understood it, for on the survey bill and memorandum of purchase signed by *Eastman,* and delivered to the plaintiff, it is certified that the wood and bark were purchased of the plaintiff for the schooner *Five Brothers;* clearly indicating the intention of the plaintiff to sell, and *Eastman* to purchase on account of the vessel.

The distinction before mentioned was clearly kept in view in the directions to the jury, they being expressly charged not to consider the leter to *Stover* as sufficient authority to *Eastman* to purchase on account of the defendants, unless they found that the general owners retained all their powers as such, and that *Eastman* had charge of the vessel, as master only in their employment; but having so found, they might consider the letter as directory ; as coming from those who had the right to direct, and consequently, whatever was done in pursuance of such direction, and within its true intent and meaning, would be binding on the defendants.

We think, therefore, that the instructions to the jury were correct, and that, if *Eastman* was master only, as they have found, he was authorised to purchase on account of the defendants, agreeably to the directions in the letter.

But it will be perceived that the authority was to purchase wood only, and not even that unless he could get a deck load of hay on freight. It does not appear that he procured any hay on freight, so that the condition on which he was authorised to purchase wood

was not complied with. Moreover, if that difficulty could be obviated, there is still another. The authority to purchase does not include bark, but the verdict covers not only the wood, but also a large quantity of bark charged in the plaintiff's account. These are objections which do not appear to have been noticed at the trial, but which remaining unexplained, require us to send the cause to another hearing.

But the plaintiff contends that the verdict may be sustained under the second instructions of the Court, which were, that if the jury should be satisfied that the general owners retained the right to control the vessel and direct her employment, and that the wood and bark were taken on board by *Eastman* to transport to *Boston* and sell for and on account of the plaintiff, then they might consider the owners answerable. The jury have not so found, but have found that there was a purchase by *Eastman* pretending to act under the authority of the letter to *Stover ;* and a purchase, whether authorised or not, is altogether inconsistent with the position of carrying for hire. If *Eastman* exceeded his authority as agent, he alone is answerable and not his principal, for whom he claimed to act.